(C.D. 4729)

PHOSTOXIN SALES, INC. *v.* UNITED STATES

Court No. 76-1-00058

(Decided January 16, 1978)

*Glad, Tuttle & White* (*Edward N. Glad* of counsel) for the plaintiff.
*Barbara Allen Babcock* (*Alan L. Langus* and *Herbert P. Larsen,* trial attorneys), for the defendant.

RICHARDSON, Judge: The merchandise in this action is a toxic pesticide in pellet form, called Phostoxin, which is composed of a mixture of aluminum phosphide, traces of aluminum oxide, ammonium carbamate, and hard paraffin. The pesticide was exported from West Germany in February, 1975, and classified in liquidation upon entry at Los Angeles, California, under TSUS item 432.00 as modified by T.D. 68–9 as a mixture not specially provided for, and, in accordance with item 432.00,[1] assessed for duty under TSUS item 425.52 as modified by T.D. 68–9 at the rate of 1.5 cents per pound plus 7.5 *per centum ad valorem* on the basis of the ammonium carbamate being treated as other nitrogenous compounds if imported separately.

The importer claims that the pesticide is properly classifiable under TSUS item 423.96 as modified by T.D. 68–9 as a mixture of two or more inorganic compounds, other, at the duty rate of 5 *per centum ad valorem,* or in the alternative, if properly classified under item 432.00, is dutiable under TSUS item 417.44 as modified by T.D. 68–9 at the same rate on the basis of the ammonium carbamate being treated as other ammonium compounds if imported separately. The importer further claims that in the event the court determines that the ammonium carbamate component of the pesticide is an *organic* chemical compound, then the pesticide is dutiable under TSUS item 425.22 as modified by T.D. 68–9 at the duty rate of 5 *per centum*

---

[1] Item 432.00 classification provides for duty assessment at the rate of 5% ad val. but not less than the highest rate applicable to any component material.

*ad valorem* on the basis of the ammonium carbamate being treated as an acyclic amide if imported separately.

In the pleadings before the court it is admitted that the aluminum phosphide and oxide components of the pesticide are *inorganic* chemical compounds, and that the cation constituent of the ammonium carbamate component is an ammonium ion. In issue under the pleadings is the allegation that the ammonium carbamate component is an· *inorganic* chemical compound. However, at the trial it was conceded by plaintiff's counsel that the paraffin component of the pesticide is an *organic* chemical compound. Consequently, irrespective of the court's determination as to the chemical nature of the ammonium carbamate component, it is clear at the outset that the imported pesticide is not composed entirely of *inorganic* chemical compounds, and as such, was properly classified under item 432.00 as a mixture not specially provided for.

The question for determination by the court then is one relating to rate· of ·duty [rather than to classification], the ascertainment of which turns upon the chemical nature of the disputed compound ammonium ·carbamate. Is ammonium carbamate an *inorganic* chemical compound as primarily claimed, or an *organic* chemical compound as classified? For tariff purposes *inorganic* compounds (including salts) are compounds not containing carbon, except carbides and such carbon-containing compounds as inorganic cyanides and cyanates, metallic carbonates, and oxides of carbon which are inorganic in nature, while *organic* compounds are compounds containing carbon except such carbon-containing compounds as carbides, inorganic cyanides and cyanates, metallic carbonates, and oxides of carbon. TSUS, Schedule 4, Part 2 headnotes 2 and 3.

The court is of the opinion that ammonium carbamate is an *inorganic* chemical compound which Congress intended should be classified under the provision for the metallic carbonates, ammonium carbonate and bicarbonate, in TSUS item 417.24 which, at the time of exportation of the subject merchandise, carried a modified specific duty at the rate of 0.25 cent per pound.

Dr. W. Conard Fernelius, Distinguished Professor Emeritus at the University of South Florida, who, among other things, has taught chemistry at American universities for over 35 years and whose familiarity with the compound ammonium carbamate dates back to 1926 and antedates that of any of the other four chemists who testified in the case, explained the difference between the carbonate and carbamate compounds. He testified that ammonium carbonate

$$\left[ (NH_4^+)_2 O - \overset{\overset{\displaystyle O}{\|}}{C} - O \right]$$

contains the carbonate ion, $CO_3$ and the ammonium ions to balance the charge. He said that the ammonium carbamate

$$\left[ NH_4^+O-C\begin{array}{c} \diagup O \\ \diagdown NH_2 \end{array} \right]$$

has a negative ion of two oxygens, one carbon, one nitrogen, and two hydrogens, and that as this is a single negative charge, only one ammonium ion is required to balance the charge. Dr. Fernelius testified that in terms of environment around the carbon, ammonium carbonate differs from ammonium carbamate by the former having three oxygens whereas the latter has two oxygens and a nitrogen. But more significantly, the witness stated that ammonium carbamate cannot be made without the presence of ammonium carbonate. He said it is always, simultaneously, a mixture of the two compounds (R. 170).

In 1921 the tariff commission mentioned the compound ammonium carbamate in the context of its report to the Senate Committee on Finance on the compound *ammonium carbonate*, then provided for in paragraph 7 of the House passed tariff bill H.R. 7456.[2] Under the heading AMMONIUM CARBONATE the tariff commission report stated:

> *Description* . . . .—Commercial ammonium carbonate, a mixture of ammonium carbonate and ammonium carbamate containing about 31 per cent of ammonia ($NH_3$), is a white crystalline salt smelling strongly of ammonia, volatile when heated, and sometimes known as sal volatile. . . .
>
> *Production.*—It is made by heating a mixture of ammonium sulphate and chalk (calcium carbonate). The vapors of ammonia, carbon dioxide, and water, on cooling, condense to form the solid mixture of ammonium carbonate and ammonium carbamate. The crude product is usually purified by sublimation. *The domestic output is unknown.* [Emphasis added.]

Contemporary lexicons defined the term *ammonium carbonate* as applying to "The commercial article called *sal volatile* . . . a mixture of hydrogen-ammonium carbonate and ammonium carbamate" [*The Century Dictionary*, 1913 edition, Vol. 1, p. 177]; and "The commercial product sold under this name [which] consists of a mixture of ammonium bicarbonate $NH_4 \cdot HCO_3$ with ammonium carbamate $NH_2 \cdot CO \cdot ONH_4$, and contains about 31 p.c. of ammonia and 56 p.c. of carbon dioxide. . . ." [*A Dictionary of Applied Chemistry*, Thorpe, revised edition 1918, Vol. 1, p. 151]. That the commercial product was considered the preferred form of ammonium carbonate is indi-

---

[2] H.R. 7456 was subsequently enacted into law as the Tariff Act of 1922. Paragraph 7 of that act, which was amended in the Senate, contained a provision for *ammonium carbonate and bicarbonate.* The same provision was reenacted as paragraph 7 of the 1930 Tariff Act, the predecessor of item 417.24 which carries the same language.

cated in an even earlier lexicon. Under the heading COMMERCIAL AMMONIUM CARBONATE Thorpe stated:

> The usual process for making ammonium carbonate does not appear quite rational, since according to the conditions of the process there is only enough $CO_2$ (3 molecules $CO_2$ to 4 molecules $NH_3$) to form a neutral salt, whilst commercial ammonium carbonate corresponds to $1\frac{1}{2}$ times as much $CO_2$. . . . Hence a large quantity of ammonia must go away in the uncombined state unless carbon dioxide in excess is passed into the condensing chambers. At Kunheim's works (near Berlin) the gaseous mixture from the distillation of gas-liquor is directly brought together with $CO_2$ in lead chambers, and thus the commercial salt is produced. . . . [*A Dictionary of Applied Chemistry*, Thorpe, 1898, Vol. 1, p. 101.]

Thus, given an awareness on the part of Congress of the presence of ammonium carbamate only as an ingredient of commercial ammonium carbonate, Congress, in providing for chemical compounds, must have had in mind chemical compounds commercially salable as such. *United States* v. *Betz*, 30 CCPA 16, 22, C.A.D. 208 (1942). Consequently, it is reasonable to conclude that Congress considered that the compound ammonium carbamate would be covered in the provision for the ammonium carbonates since, as the uncontroverted testimony of the witness Fernelius reveals, the disputed compound does not exist independently of the carbonate compounds, i.e., if imported at all it would come in in the form of commercial ammonium carbonate.

Having concluded that Congress intended ammonium carbamate to be included in any classification scheme for ammonium carbonates under the 1930 and prior tariff acts, it follows that when Congress subsequently designated ammonium carbonates as *inorganic* chemical compounds under the Tariff Schedules it intended the same designation to apply to ammonium carbamate. That this is the case is reflected in the fact that Congress did not intend any significant changes beyond a "reorganization of existing provisions" to be made in the classification of *inorganic* chemical compounds under the Tariff Schedules. *Tariff Classification Study*, Schedule 4, p. 56. Any other view on the part of the Congress concerning the nature of chemical compounds would have compelled that body to make specific provision for the long known ammonium carbamate compound consistent with its general intention to make specific provision in the Tariff Schedules for known commercial commodities. *Tariff Classification Study, Submitting Report*, p. 16.

Moreover, reference sources which are said to have "exerted the greatest influence on the arrangement of the proposed revised schedules"; namely, the Standard Industrial Classification Manual and the Brussels Nomenclature, place ammonium compounds in general and

ammonium carbamate in particular in the categories of inorganic chemical compounds and carbonates, respectively. *Tariff Classification Study, Submitting Report*, p. 8; *Standard Industrial Classification Manual*, Industry No. 2819, pp. 77, 299; *Explanatory Notes to the Brussels Nomenclature* (1955) p. 201, Heading 28.42. Thus, under subchapter V entitled Metallic Salts . . . of Inorganic Acids of the Brussels Nomenclature, whose division of chemical compounds is not unlike our own, Heading 28.42 provides for: CARBONATES . . . IN-CLUDING COMMERCIAL AMMONIUM CARBONATE CONTAINING AM-MONIUM CARBAMATE.

In the light of the legislative history of the tariff provision for ammonium carbonate and bicarbonate and the testimony of the witness Fernelius, among others, the conclusion is inescapable that ammonium carbamate is an *inorganic* chemical compound classifiable under the provision for ammonium carbonates in item 417.24. And since the modified specific duty provided for in item 417.24 is less than the *ad valorem* rate of duty provided for in item 432.00, the latter duty rate must prevail, and the court so holds. For the reasons stated the imported pesticide, Phostoxin, is dutiable under the provision for ammonium carbonate and bicarbonate in item 417.24 at the rate of 5 *per centum ad valorem* in accordance with item 432.00.

Judgment will be entered herein accordingly.